IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ettamae S. Powell, | ) | Civil Action No. 8:13-03176-BHH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On April 25, 2011, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of July 29, 2012.[2] [R. 116–17.] The claim was denied initially and on

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Plaintiff alleged disability beginning May 1, 2008, in her application, but she later amended the onset date to July 29, 2012. [R. 182.]

reconsideration by the Social Security Administration ("the Administration"). [R. 51, 54–57, 61–62]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on September 10, 2012, ALJ Ronald Sweeda conducted a de novo hearing on Plaintiff's claims in North Charleston, South Carolina. [R. 28–49.]

The ALJ issued a decision on September 21, 2012, finding that Plaintiff had not been under a disability as defined by the Act from July 29, 2012, through the date of the decision. [R. 19–27.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2015, and had not engaged in substantial gainful activity since July 29, 2012, the alleged onset date. [R. 21, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: cardiomyopathy, history of cardiac arrhythmia, history of breast cancer, and lymphedema. [R. 21, Finding 3.] The ALJ also found Plaintiff had a non-severe impairment of depression resulting in mild restriction in her activities of daily living, mild limitations in her social functioning, and mild deficiencies of her concentration, persistence, or pace. [R. 21–22.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 22, Finding 4.] The ALJ specifically considered Listings 1.02A, 1.03, and 4.11 with respect to Plaintiff's lymphedema; Listings 4.02, 4.05, and 11.04 with respect to Plaintiff's cardiomyopathy and arrhythmias; and Listing 13.10 with respect to Plaintiff's breast cancer. [R. 21–22.]

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can only lift or carry 20 pounds occasionally and 10 pounds frequently using her left arm as a guide; cannot reach beyond arm's length with her non dominant left upper extremity; cannot perform overhead work; cannot climb ladders, ropes, or scaffolds, balance, crawl, or kneel; and cannot work at unprotected heights or with dangerous machinery.

[R. 22, Finding 5.]  Based on this residual functional capacity ("RFC") finding at Step 4, the ALJ determined Plaintiff could not perform her past relevant work as a cosmetologist [R. 25, Finding 6]; but, based on her age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 26, Finding 10].  On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from July 29, 2012, through the date of the decision.  [R. 27, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–5.]  Plaintiff filed this action for judicial review on November 22, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1.    the ALJ failed to resolve a conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT") in violation of SSR 00-4p;

3

2.    the ALJ failed to include Plaintiff's need to elevate her left arm for significant periods of time in his hypothetical question to the VE and in his RFC findings; and,

3.    the ALJ erroneously rejected the treating physician opinion of Dr. Christian, a specialist in oncology.

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ

1.    properly determined Plaintiff's RFC and properly excluded any limitation requiring Plaintiff to elevate her left arm for significant periods of time; and appropriately did not need to ask the VE to assume Plaintiff's need to elevate her left arm for significant periods of time;

2.    properly evaluated and weighed the opinion of Dr. Christian giving it less than controlling weight; and,

3.    At Step Five, properly relied on the VE's testimony that Plaintiff can perform other work in the economy; properly determined that there was no conflict between the DOT and the VE's testimony; and addressed the mandates of SSR 00-4p.

The Commissioner asks the Court to affirm its decision.  [Doc. 22 at 11.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than

4

a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C.

5

§ 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new

6

material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

_____

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g., Brooks v. Astrue*, No. 6:10-cv-152,

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

I.     **The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination

10

of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

11

Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . .

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

. and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

14

**IV.    Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

**V.    Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter

of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."

*Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

16

of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb

17

credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### The ALJ's Resolution of a Conflict Between the VE Testimony and the DOT

Plaintiff argues that during his Step Five analysis the ALJ failed to resolve a conflict between the VE's testimony and the DOT in violation of SSR 00-4p, and thus erred by relying on the VE's testimony.  [Doc. 18 at 12–17.] Specifically, Plaintiff argues the ALJ failed to resolve a conflict between the VE's testimony that Plaintiff could perform certain identified jobs "single handedly" when loss of manual dexterity in one hand has been deemed a "significant non-exertional impairment," and the Commissioner's own regulations have acknowledged that "work at the light exertional level generally requires gross manipulation or the ability to use arms and hands to grasp and to hold and turn objects." [*Id.* at 13–14.] Further, Plaintiff contends that the VE's testimony that Plaintiff could perform the specified jobs single-handedly does not constitute substantial evidence to support the ALJ's decision, and the Commissioner had the burden of proof at Step Five.  [*Id.* at 17; Doc. 27 at 1–2.]  In contrast, the Commissioner contends the ALJ properly relied on the testimony of the VE who explained that the identified jobs could be performed with only one hand because "he has observed people perform these jobs with one hand and has hired people to perform these jobs with one hand." [Doc. 22 at 8.]  The Commissioner further submits that no conflict exists and, even if one does, the ALJ's decision adequately addressed the mandates of SSR 00-4p.  [*Id.* at 9.]  The Court agrees with Plaintiff.

18

*Vocational Expert's Testimony*

The colloquy between the ALJ and VE was as follows:

> ALJ:   If I were to assume that a person of the claimant's age, education and work experience could perform light work in which lifting 20 pounds occasionally, 10 pounds frequently, but use of the non-dominant left arm is only as a guide; further assume, no reaching beyond arm's length with the left upper extremity, no overhead work, no climbing ladders or scaffolds, balancing, crawling or kneeling, no unprotected heights or dangerous machinery.  Would there be jobs for a person with that capacity that are defined as light in the Dictionary of Occupational Titles?

> VE:    Yes, sir.

> ALJ:   Such as?

> VE:    Storage facility clerk, 2, unskilled, light, 295367026; 4,400 in South Carolina, 416,000 nationally.

> ALJ:   What was the South Carolina number:

> VE:    I'm sorry, 4,400; 416,000 nationally.   Ticket tacker, 2, unskilled, light, 344667010; 1,260 in South Carolina; 104,000 nationally.   Coupon redemption clerk, 2, unskilled, light 290477010; 270 in South Carolina; 15,900 nationally.

[R. 44–45.]  On cross-examination, Plaintiff's counsel asked as follows:

> Atty:   The jobs you cited at the light exertional level, do those jobs require any bilateral handling, fingering or feeling?

> VE:    They do, but [inaudible] other hand, [inaudible] single handedly.

> Atty:   Okay.  That's - - single handedly?

> VE:    Right.

> Atty:   And what is the basis for your- - have you seen them done that way?

> VE:    I'm [sic] observed them, hired these people.

[R. 45–46.]

### ALJ's Decision

Because the ALJ determined that Plaintiff could perform only certain light work in accordance with his RFC finding that Plaintiff could use only her left arm as a guide and other limitations, the ALJ decided that he needed to use VE testimony to inquire about occupations Plaintiff could perform. [R. 26.] As noted above, the VE testified that Plaintiff could perform the jobs of storage facility clerk, ticket taker, and coupon redemption clerk. [*Id*.] The ALJ found that those jobs "essentially could be performed one handed" because the VE testified as such, and the VE's testimony was reasonable and reliable because it was based upon his personal observations and/or professional knowledge. [*Id*.]

### Discussion

The provisions of 20 C.F.R. § 404.1566(d) state that the ALJ should take administrative notice of job information contained in the DOT. Further, SSR 00–4p indicates that "we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." In some cases, ALJs call upon the services of a VE to address how certain restrictions affect a claimant's ability to perform specific jobs. 20 C.F.R. § 404.1566(e). Because the opinions of VEs sometimes conflict with the information contained in the DOT, the SSA promulgated SSR 00–4p to explain how these conflicts should be resolved. SSR 00–4p provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not

20

> there is such consistency. Neither the DOT nor the VE or VS
> evidence automatically "trumps" when there is a conflict. The
> adjudicator must resolve the conflict by determining if the
> explanation given by the VE or VS is reasonable and provides
> a basis for relying on the VE or VS testimony rather than on the
> DOT information.

SSR 00-4p.  Thus, before relying on VE testimony to support a disability decision, the ALJ

must "identify and obtain a reasonable explanation for any conflicts between occupational

evidence" in the DOT and in its companion publication, the Selected Characteristics of

Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), and explain

in the determination or decision how any identified conflict was resolved.  The ALJ has an

affirmative responsibility to ask about any apparent conflict between the VE testimony and

the information provided in the DOT.  SSR 00–4p.

Here, Plaintiff contends that if the ALJ had found that Plaintiff was limited to work at

the sedentary exertional level, was unable to return to past relevant work, and could not

transfer her job skills to sedentary jobs, the Medical-Vocational Guidelines would direct a

conclusion of disabled. [Doc. 18 at 4.] The ALJ noted that the question before him was

whether Plaintiff's limitations on using her left upper extremity limit her to only sedentary

work and that he needed a VE to help answer that question.  [R. 45.]  Plaintiff argues the

ALJ failed to investigate and elicit a reasonable explanation from the VE regarding the

conflict between the DOT's job descriptions of storage facility clerk, ticket taker, and

coupon redemption clerk in addition to the Commissioner's regulations, which require the

ability to use arms and hands to grasp and to hold and turn objects to perform the jobs at

the light exertional level,[7] and the VE's testimony, which indicates the jobs he identified at the light exertional level can be done single handedly. [Doc. 18 at 12–17.]

As stated above, pursuant to SSR 00–4p, the ALJ has an affirmative responsibility to ask about any conflicts between the VE testimony and the information provided in the DOT.  *See Gosnell v. Astrue*, C/A No. 4:09-3142-RMG, 2011 WL 124449, at *3–4 (D.S.C. Jan. 14, 2011) (explaining the ALJ is required to inquire on the record as to whether or not there is a consistency between the DOT and the VE's testimony, and finding the error was not harmless because it was unclear how the plaintiff could perform the two jobs given the ALJ's conclusion that the plaintiff could only sit for four hours of an eight hour work day). In spite of the ALJ's indication that he determined the VE's testimony was consistent with the information contained in the DOT [R. 26], the undersigned's review of the transcript reveals that the ALJ failed to question the VE regarding the existence of conflicts with the DOT.  While the Commissioner is correct that "nothing in the DOT excerpts [Plaintiff] cites establishes that a person could not perform these jobs with one hand" [Doc. 22 at 9], they do indicate the physical demand requirements and the frequency that the hands are used

---

[7] SSR 83–12 provides that "[a] person who has lost the use of an arm or hand because of amputation, paralysis, etc., obviously cannot perform jobs which require use of both arms or both hands.  Loss of major use of an upper extremity is rather definitive in that there is a considerable absence of functional ability."  SSR 83–14 provides that "many unskilled light jobs . . . require gross use of the hands to grasp, hold, and turn objects.  Any limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work."  *See also* SSR 85–15, 1985 WL 56857, at *7 ("[L]oss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work."); SSR 96–9p, 1996 WL 374185, at *8 ("Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.").

22

in each job, suggesting that both hands may be necessary at times to perform the job requirements. [*See* Doc. 18 at 14–15 (setting forth the job descriptions of storage facility clerk, ticket taker, and coupon redemption clerk).] *See also Gosnell v. Astrue*, C/A No. 4:09-3142-RMG-TER, 2010 WL 5579873, at *3 (D.S.C. Dec. 16, 2010) (in order to rely on VE testimony, if the VE's testimony appears to conflict with the DOT, the ALJ "will obtain a reasonable explanation for the apparent conflict."), *Report and Recommendation adopted by* 2011 WL 124449 (D.S.C. Jan. 14, 2011).

The Fourth Circuit has held that SSR 00–4p does not require an ALJ to uncover conflicts between the VE's testimony and DOT evidence, but rather requires the ALJ to inquire only if apparent conflicts exist between a VE's testimony and the DOT and to resolve such discrepancies. *See Justin v. Massanari*, 20 F. App'x 158, 160 (4th Cir. 2001). The VE testified to an actual conflict when he answered counsel's question in the affirmative indicating that the jobs he had identified require bilateral handling, fingering and/or feeling. [R. 45.] This response triggered the ALJ's duty to inquire further; he did not. *See Stephens v. Colvin*, C/A No. 9:12-1376-SB, 2013 WL 5440151, at *8 (D.S.C. Sept. 27, 2013) (explaining that a reasonable explanation for a conflict may be based on the VE's own experience in job placement or career counseling, and remanding because of the ALJ's Step Five errors). Although the VE further testified that he has seen the stated jobs performed single handedly, [R. 46], the problem here is that it is impossible to determine from the record what the opinion of the VE was regarding any conflict with the DOT.

Moreover, neither the VE nor the ALJ gave careful consideration to determine the impact of having full use of only one hand and arm on the size of the occupational base as

required by the Administration's statements in SSR 83–12, 83–14, and 85–15 (a limitation of functional abilities must be considered very carefully to determine impact on occupational base). Although the ALJ's decision stated that the VE testified that the identified jobs "essentially could be performed one handed," the Court finds the explanation given by the VE did not constitute careful consideration of the impact of having full use of only one hand and arm on the occupational base.  Thus, this Court cannot find that substantial evidence supports the ALJ's decision to rely on the VE testimony that a person could perform those jobs single handedly where the VE simply stated, "I'm [sic] observed them, hired these people" without any further explanation of the impact on the occupational base.  *See Hines v. Barnhart*, 453 F.3d 559, 566–67 (4th Cir. 2006) (a VE's opinion must be in response to proper hypothetical questions, and the Commissioner bears the evidentiary burden of proving that a plaintiff remains able to work other jobs available in the community).  In other words, substantial evidence does not support the ALJ's decision that the Commissioner carried her burden of proof at Step Five.  Therefore, the Court is constrained to recommend remand.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ erred at Step Five as set forth above, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

<u>**CONCLUSION AND RECOMMENDATION**</u>

24

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED AND REMANDED to the Commissioner for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.


December 2, 2014                         s/Jacquelyn D. Austin
Greenville, South Carolina              United States Magistrate Judge